Pee Oueiam.
 

 Two attachments tvere sued out in Washington County against Hugh Newnan ; one in the name of the defendant, Thomas Stuart, the other in the name of Montgomery Stuart. The complainant was summoned * as a garnishee in both suits. He, as appears by the record, admitted on oath that he had in his hands of the estate of Hugh Newnan $ — . Judgment by default was entered against H. Newnan, and the suits stayed nine months, agreeably to the provisions of the act of Assembly. Before final judgment H. Newnan died. Administration of his estate was granted in North Carolina, and the complainant administered in this State. Writs of
 
 scire facias
 
 in both suits were sued out and made known to him, as administrator, to show cause, &c. He made no defense or appearance, and judgment was entered against him as administrator of Hugh, to be levied of the goods and chattels of the deceased in his hands to be administered; and if there were no goods and chattels, then the proper goods and chattels of him the said John Newnan.
 
 Scire facias
 
 issued on both these judgments, and were made known to the complainant. He made no defense, and judgments were entered against him to be levied
 
 de bonis pro-
 
 priis, to set aside this judgment. In the name of Montgomery Stuart, the complainant filed this bill, in which he. alleges, that at the court, in August, 1807, an agreement was made ; that for the purpose of enabling the Stuarts to recover judgment against Hugh New-nan on the attachments, it was agreed between this complainant and Thomas Stuart, that he, the complainant, should admit assets in his hands to some amount, but that he should not be liable to pay them out of his own estate; that this agreement was made between himself and Thomas Stuart, who had been a partner, and acted as agent for his brother Montgomery, and John Kenneday, who was attorney for both, and was intended to embrace both suits; the complainant, at that time, believing there was but one, and that he, lulled to security by this agreement, made no defense at any subsequent period; that at the time he, as garnishee, admitted he had of the property of Hugh Newnan in his * hands,
 
 *574
 
 there was no other, except on a final settlement of the estate of A. Newnan, deceased, he should be found as executor to have something in his hands to be paid to said Hugh, a legatee; and avers, that on an adjustment and calculation of the amount of that estate, and the sums paid to creditors, and to H. Newnan as legatee, nothing then remained in his hands, nor since that time have any assets of his father Anthony’s estate come to his hands, or any of the assets of H. Newnan, deceased, liable to the judgments.
 

 Complainant also insists that the claims on which the attachments issued were partnership accounts, and each of the Stuarts interested in
 
 both, and
 
 recovered judgment against H. Newnan’s estate for more than was justly due; prays that the judgment obtained against him by Montgomery Stuart may be perpetually enjoined; that an account be taken for assets, and for general relief.
 

 Thomas Stuart, in his answer, admits an agreement was made between himself and complainant at court, in August, 1807, which was afterwards drawn up by the complainant’s attorney, and signed by him, Thomas; that the debt for which his brother Montgomery sued was not a partnership debt, nor had he any interest therein, but believes that it was
 
 just;
 
 that he was not authorized by his brother to make any agreement for him, nor did he ever pretend or insinuate that he had any such authority; alleges that the complainant, as executor of A. Newnan, deceased, had in his hands sufficient to satisfy both debts at the time of the garnishment, and that he afterwards made a disposition of part thereof contrary to law and to his agreement.
 

 Montgomery Stuart answers, that the debt due by Hugh New-nan was just, and due to himself alone, for moneys advanced to Patton & Irwin, and to Chaires, at the request of H. Newnan; denies that he ever authorized Thomas Stuart, or any other person, to make * any agreement for him respecting his suit as stated in the bill; nor did he know or hear anything <5f the agreement between the complainant and Thomas Stuart till long after it bears date; that he pursued, as he believes, the means pointed out by law to recover his just debt, and the complainant having an opportunity to defend himself at law this court ought not to interfere and take from him the benefit of his judgment; insists that there are assets in complainant’s hands to satisfy his judgment, if properly administered.
 

 
 *575
 
 To these answers there are replications.
 

 A court of equity will not give relief against a judgment at law where the party has had a full and fair opportunity of defense there, but if he has been prevented from making that defense by circumstances which by due diligence he could not have controlled, he may in some cases have relief in this court. He may also, and ought to have relief where the judgment was procured by the art, fraud, or contrivance of the opposite party, or in violation of an agreement entered into between the parties, or if when a judgment be obtained it is attempted to be enforced so as to have an effect different from that stipulated; but in the latter cases the proof and extent of the agreement ought satisfactorily to appear.
 

 From the depositions in this cause it appears that at the return of the attachments against H. Newnan, the complainant, who was summoned as garnishee in both, appeared and employed Gf. Duffield as his counsel; he made a motion to court to quash the attachments, and while he was addressing the court on that motion, the complainant, Thomas Stuart, and Mr. Kennedy, who was counsel for botlx plaintiffs, had a conversation, in which the complainant insisted that he would not make any admission of having anything in his hands so as to subject himself to pay out of his own estate ; that the estate of Anthony Newnan, his father, was not settled, and he could not tell whether
 
 *
 
 he, as executor, owed anything to H. Newnan as legatee or not.
 

 They disclaimed any desire to subject him to the payment out of his own funds, and only wanted such an acknowledgment as would enable them to proceed and procure a judgment against Hugh Newnan. The complainant assenting to this, took a few dollars from his pocket, and said he was willing to admit that sum to be due to H. Newnan, if it would do them any good. Mr. Kennedy then inquired whether or no there were not lands of Anthony Newnan, directed to be sold by his executors, and, if the sale was effected, whether he would not then have sufficient to discharge the demands; he replied he supposed there would. On this admission, the complainant’s counsel endeavored to have the agreement before made entered of record, but some objection having been made, it was not done. The counsel for the complainant, then garnishee, made out two copies of the agreement, one to be signed by Thomas Stuart, the other by Montgomery Stuart. What was done
 
 *576
 
 with the latter copy does not appear; but in January following, Thomas Stuart signed the agreement as follows: “ Know all men by these presents, that whereas John Newnan, garnishee in the writ of attachment,
 
 Thomas Stuart
 
 v.
 
 Hugh
 
 Newnan, hath confessed judgment at August sessions, 1807, of the Court of Pleas and Quarter Sessions, of Washington County, for the sum of-dollars, in consideration that the said Thomas Stuart had agreed, that he would release the said judgment if sufficient property and effects of the said Hugh Newnan, liable by law to the satisfaction thereof, should not come into the hands and possession, of the said John Newnan, to satisfy the same: Now I, the said Thomas Stuart, in consideration of the premises in the event aforesaid, or in case the said Hugh Newnan shall have legally transferred or made over to any person or persons whatever his property or right thereto accruing by * his father’s will, so that the same shall not be liable in the hands of said John Newnan for satisfaction of said judgment, do hereby covenant and agree with the said John Newnan, his heirs, executors, and administrators, to release to him or them the aforesaid judgment, or so much thereof as' there shall not be such property to satisfy, or to pay . to the said John Newnan, his heirs, &c., all such damages as may be sustained by any proceeding on said judgment, contrary to the true intent and meaning of these presents, and it is further understood, that the said John Newnan in the mean time shall make no illegal disposition of the estate of the said Hugh Newnan, to defeat the said judgment or any part thereof. For the true performance whereof, &c.” (A penalty of $2,000 is added, and it is signed and sealed by Thomas Stuart).
 

 By this covenant, T. Stuart was estopped and precluded from resorting to the complainant for satisfaction of the judgment which might thereafter be rendered in his suit against H. Newnan, unless in conformity with the terms of the agreement. But the principal inquiry in this suit is, whether the agreement shall have any effect on the suit commenced by Montgomery Stuart. We believe that, in equity, this judgment ought only to be paid out of the estate of Hugh Newnan, deceased. Montgomery had been engaged in a mercantile partnership with his brother Thomas for several years; during which time the debt was contracted for which Thomas had sued. They were also in partnership at Asheville, at
 
 *577
 
 least ostensibly (notwithstanding the private agreement alleged to exist as to Montgomery’s sole responsibility at that place), and during that period the debt was contracted for which Montgomery commenced his suit. If we add to this, that J. Newnan, the garnishee, was only called on to declare a single fact, equally applicable to both suits, the attorney who conducted both taking an active part in the agreement, the admission
 
 *
 
 of assets was entered in both suits, and but for that admission, thus procured, Montgomery could not have proceeded in his suit, the agreement ought now to be considered as equally applicable to both.
 

 Where was the then object the parties had in view at that time ? Such an admission of assets in the hands of the executor, payable tó H. Newnan, as would enable Thomas and Montgomery Stuart to proceed in their respective suits and obtain judgment; to secure those assets, if any, in the hands of the executor, so as to be liable to satisfy the judgments when obtained, and a security to the executor (garnishee) from liability out of his own estate. The estate of Anthony Newnan was not then settled. It was not known what sum, if any, was due to H. Newnan; there was a prospect that further assets would thereafter come to. the hands of the executor for distribution, but that prospect might never be realized. If any assets were then in his hands, or should after-wards be received, he was bound to make no disposition of them calculated to defeat the satisfaction of the judgment.
 

 It was not known but that H. Newnan might have sold and transferred his interest in the distributive share. Such an event was also provided against; in short, the objects the parties had in view were to secure in the hands of the present complainant such assets as he had or might thereafter have, and if none, or not sufficient, to secure his own estate from all responsibility.
 

 Hugh Newnan died before judgment, the present complainant administered, the suit was revived against him. As administrator, he might have defended the suit; there was nothing in the agreement to prevent it; and after such negligence and inattention as appears from his own showing in his bill, this court, as a court of equity, will not set aside judgments fairly obtained, nor hear allegations that too much has been recovered on those suits.. Nor will a
 
 *578
 
 court of equity act as a * court of errors, to set aside judgments for error in law arising on the face of the record.
 

 But it is insisted that when the
 
 sci.fa.
 
 was made known to the present complainant to charge him
 
 de' bonis propriis,
 
 he ought to have defended himself at law, and having failed to do so this court ought not to relieve him. It is true there was great negligence, for which it is difficult to account in any other way than that he, relying on the agreement that his own property should be released from all liability, was thereby lulled into security by a reliance on the good faith of the parties to the contract. It is on this ground, and this alone, that the court can interfere and compel the parties to proceed in conformity with the agreement.
 

 Decree that the defendant, Montgomery Stuart, be perpetually enjoined from proceeding on the last judgment, charging the complainant
 
 de bonis propriis.
 
 And that the complainant pay the ;amount to the defendant, M. Stuart, out of the estate 'of the deceased which was in his hands at the time .of the garnishment, or •.which may have come to his hands thereafter, if so much there be
 
 ;
 
 -and if not, then as much as he then had or now has unadministered, .and that it be referred to the clerk and master to report to next .court.
 

 See
 
 Smith
 
 v.
 
 Vanbebber,
 
 1 Swan, 110;
 
 Estes
 
 v.
 
 Patton, 3
 
 Yer. 382;
 
 Thompson
 
 v.
 
 Meek,
 
 3 Sneed, 271;
 
 Campbell
 
 v.
 
 Paul, 3
 
 Yer. 548;
 
 Nicholson
 
 v.
 
 Patterson,
 
 6 Hum. 394; King’s Digest, 2217, 2365-68.